May it please the Court, I am Peter Dinello, and with me are Leonard Feldman and Kevin Sullivan. We represent Seahawk Seafoods, Inc., a member of the Punitive Damages class and the appellant here. I would like to reserve five of my 15 minutes for reply. We are here because last year, in this very case, the United States Supreme Court held that a one-to-one ratio of punitive to compensatory damages is a fair upper limit in such maritime cases. Upper limit of what? Upper limit of punitive damages. Of whose liability? Of the defendant's liability. Exxon. Exxon, yes. Counsel, I would see considerable merit to the argument that a plaintiff who had a bigger portion of the compensatories should get punitives on the one-to-one basis that was the agreement for the whole pot, and one that had less would get less, but for the deal. And I don't understand the fundamental issue in your argument. It seems to me this plan was passed around. Everybody had notice. The appellants in this case or appellant did not object to it. That's the deal. It doesn't matter, I don't think, that the deal was based on a misapprehension of law. It doesn't matter that people may have had different equities. I can't see that anything matters except that a deal's a deal. What am I missing? What I believe you're missing, Your Honor, is that Rule 23E imposes a continuing and to keep the settlement fair, reasonable, adequate, and in conformity with existing law. What's unfair about holding people to their deal? But if you're talking about the 1994 and 1995 agreements, as opposed to the plan of allocation itself. I'm talking about the plan, actually. Okay. The plan of allocation. That's a deal because it was worked out, passed around, notice was given, and there was no objection to it. Right. Okay. The plan of allocation is subject to the judge's responsibility to determine it's fair, reasonable, and adequate. And that's a continuing duty. We cited several cases where But what makes it unfair later? What's unfair And see where, if you look at it later, you might say, gee, if we'd known this, we might have negotiated it differently. But that's not the same as saying it's unfair. Well, the question you're raising, Your Honor, is, I think, does the duty of the court to supervise the settlement go on and require changes in the law to be taken into account? I really don't understand how the, I'm sorry, but I've got a fundamental problem. The whole idea of punitive damages is to punish the defendant, which was Exxon. When the Supreme Court said that there is a limit in maritime law to the ratio of the punitives to compensatory damages of one-to-one, it was talking about Exxon's liability for punitives, I thought. And Exxon was a party to that dispute. Now, we here are talking about plaintiffs among themselves. And I don't see what the one-to-one limit on Exxon's responsibility has to do with the enforcement of the deal, as Judge Kleinfeld puts it, that was made years earlier. First of all, on the fact that punitive damages are defense-focused, it's two sides of the same coin. If a defendant has to pay a dollar and cannot pay more than a dollar, the plaintiff receives a dollar and cannot receive more than a dollar. I think what you have standing to challenge another plaintiff's recovery of the punitive damages. We are asserting our own rights to a plan of allocation that conforms to the one-to-one rule. And I think in further answer to your question, Judge Schroeder, what the Supreme Court did in Baker is say that, and this is ruled not just for class-action maritime cases, but it's for all maritime cases, that punitive damages shall not exceed compensatory damages. And what this plan of allocation does is violate that rule, the rule laid down in this case for many, many plaintiffs. None of that is for the plaintiff's benefit. The plaintiffs in a punitive's case just stand there holding the pot when the benefits of the punishment of the defendant fall their way. But, Your Honor, the law has to be applied. It's not for their benefit. It's for the punishment of Exxon. But the Supreme Court's ruling has to be applied in this case. It's a ruling in this case. What is the, what's in Baker that talks about allocation rights? There's a two-part answer to that question. First is Baker itself, and then is what the Supreme Court's decision in Amcot says. Baker says that, and it starts with an analysis of the 24 subcategories of punitive, of compensatory damages that Judge Holland added up to get to the $507 million. The Supreme Court in Baker said, we accept that, so there's $507 million in punitive damages that we're going to award here. And what the court did in getting to that rule, the one-to-one, is it looked at punitive damage cases and ratios in their, in punitive damages cases, and decided one-to-one was a fair upper limit. So that sets the rule that if Joe Plain has sued a shipping company, a maritime case, gets $1,000 in compensatory damages, he can only get $1,000 in punitive damages. But Amcot says, this is the Supreme Court. No, no, it's not exactly he can only get $1,000. It's the defendant can only be punished to the extent of $1,000. Your Honor, I think... For example, you can have regimes like Alaska's, where if the defendant can only be punished to the extent of $1,000, if I recall our Tort Reform Act, the plaintiff doesn't get the $1,000. 500 of it goes to the state of Alaska. Certainly, some states have that rule. So the punitives is to determine how much, and the limit on punitives in Baker is to determine how much the defendant can be hurt, not how much the plaintiff can be helped. Except that in this case, Your Honor, we don't have an Alaska rule. I think they have a similar one in Oregon. Here, the punitive damages all go to the plaintiffs. So when you say the defendant has to pay $1, he has to pay that $1 to the plaintiff. But the idea is compensatories account for everything the plaintiff's entitled to for the wrongs to them. The punitives are just punishment to the, of the defendant, limited by the wrong to the plaintiff, but not for the benefit of the plaintiff. And it's true that the limit is on the defendant, but these damages are not paid into the ether somewhere. They are paid to living, breathing persons. Let me ask you this. Suppose that Judge Kleinfeld and I are in an accident, and we come to an agreement among ourselves that Judge Kleinfeld is going to hire the lawyer, he's going to pay all the costs. Did I cause this one, too? What? Did I cause this one, too? Yeah, probably. And we'll see, yeah, but we're going to go after punitive damages, but we agree that because he's going to defund all this, that he's going to get 60% of the punitive damages, which means that he's going to get, the punitive damages are going to be one-to-one, we're bones. And so, but he's going to get 60%. Now, are you saying that he can't, that that agreement is no good, and that I can then say, okay, now I'm entitled to more? We are not saying that, but we are saying that our case is very different because this is a class action. I think you are. And we had a deal, I get 60% of whatever punitive is from the drunk driver that hit us. And then the jury says that Judge Schroeder's damages, compensatory damages, are much greater than mine. So, the 60-40 really doesn't seem fair anymore in relationship to the compensatory damages. But still, a deal's a deal. I get 60 cents on a dollar. Right, but in a two plaintiff case, the court does not have the power to override a private agreement among the parties. In a class action, the court has the responsibility to independently assess whether that agreement is fair, reasonable or not. Okay, but why is it unfair? It is unfair because it violates the law. The law says that punitive damages in a single plaintiff case and in all cases in the maritime law are limited to compensatory damages. I think that you're running afoul of the fundamental principle that we have recognized in this litigation over and over of trying to encourage settlements and parties to agree on how litigation is to be pursued. That was the whole point of our validating the CEDBAC agreements. And you seem to be saying, okay, now we get to reconsider all of our agreements in light of how it eventually comes out. That doesn't seem right to me. That seems to be contrary to the policy of the law to encourage settlement disputes. You know, we're talking about a plan of allocation. The settlements in 94 and 95 are dropped out of the picture. Judge Holland said that on ER 19. No, I'm just talking about the general policy of the law. You say the law is. And I'm saying the policy has always been to encourage dispute reconciliation. And you seem to be going contrary to that by saying that you can undo the agreement that was made before anybody knew what the ratio was going to be. I think the problem with Rauner's analysis is that if that principle were adopted, that would mean the trial judge would have no role under Rule 23E in deciding whether a settlement is fair, reasonable, and adequate. Every time the judge exercises that authority, the parties have come to him and said, this is a settlement that we think is fair. Every single time, that's the only way it gets to the trial judge. And so the logical extension of your analysis is that the trial judge's responsibility has disappeared. And that is not the case. Many, many appellate cases, we cited some, overturn settlements approved in class actions, approved by the trial court. That's the whole exercise. Private agreements do not trump the judge's responsibility. Here the judge had an ongoing duty under Rule 23, and we cite a case like Thomas v. Albright. Let's go with you on all that. I think actually you're right, that in a class action, the judge has a continuing responsibility to assure fairness to the members of the class. That's why, for example, he doesn't just rubber stamp the attorney's fees. He determines whether they're excessive. And the contingent fee agreement with the class representative isn't binding. Nevertheless, I still don't see what's unfair. You've given me one reason that I understand, but I don't think I'm persuaded, and that is the law subsequently made it clear that there's a one-to-one ratio maximum. I don't really see why that makes it unfair for the reasons my earlier question suggested. Is there any other reason that the plan of allocation is unfair? Again, it goes directly to Ann Kim. That's what the Supreme Court said. A class action device cannot be used to bridge, enlarge, or modify any substantive right. The substantive right is owned by Exxon to put a cap on damages. You don't, it seems to me, you don't have a substantive right for reallocation of a prior agreement. No, the substantive right is that an individual plaintiff is limited to his compensatory damages. If a plaintiff tried to submit a jury instruction that said you can give them. Substantive right is owned by who? Who owns the substantive right? The substantive right is a limitation on punitive damages, and that applies to every party in the case. It applies to what? It's to damages that the defendant has to pay. Right. It doesn't necessarily mean that that fixes the obligations among the plaintiffs if they wish to allocate the ultimate liability among themselves. But the question is how can it be fair to give somebody more than they would in a class action, more than they would be entitled to if they sued on their own in a single plaintiff action? And Ken says you can't do that, and that's based on the Rules Enabling Act enacted by Congress. I'm down to a minute and 40, so I'd like to reserve that for you all. Thank you. Please, Dave Esting again on behalf of the same client. I have a few brief points to make. First of all, it's our position that the Supreme Court did not have the question before and did not address anything with regard to the distribution or allocation of punitive damages awarded in this case. And it certainly didn't say that the parties couldn't vary the ratio that they developed there by agreement. The issue simply wasn't there at all. The other point I'd like to make is that, and Seahawk was a party to the agreement, still is. It's all there as to what was going on. And when they have concluded- Seahawk was a part of all of the plaintiffs that went to the Supreme Court? Yes, still is. Okay, if Seahawk had wanted to protect its position in this regard, I take it that your position is that it's bound by the agreement that was entered into before and the Supreme Court decision didn't affect it. If they had wanted to protect their position in order to challenge, to make sure that they didn't get less than the proportion that whatever the Supreme Court would come up with as to Exxon's liability, how would they have done this? They would have had to file a petition for cert, independently of the class, and ask the Supreme Court to address the allocation and division. Wouldn't they have had to object to the allocation? They certainly would have, but our position on that is very simple. They signed the Joint Prosecution and Sharing Agreement twice. I'm sorry, what did you say? They signed the Joint Prosecution and Sharing Agreement twice, once in 1994 and once in 1995. They then proceed in 1996 to remain silent, at least, if not support the plan of allocation, which is bottomed precisely on those sharing agreements. In 2002, they overtly supported both the modification of the plan of allocation and the process of distribution plan, and the percentage that they were to recover under those two plans. That matured into a final judgment on Order 351, and that was the time they had to seek redress if they were going to seek redress. It was too late thereafter. Order 351 was a modification of the allocation plan? And the process of distribution plan. They have the allocation plan, they have 51 distribution plans underneath it. And Order 351 supported that, rather than objecting to it? They supported it. As we point out in our papers, we quote from their brief, Lube Council, Seahawk, and Appellant Rexon agree that the amended plan of distribution correctly allocates Seahawk 0.2921 percent. Stop to do otherwise at this point, or argue otherwise. Finally, one other thing I'd like to point out is that once these parties have come to an agreement, including an agreement for distribution of class recoveries, a subsequent change in the law after the distribution plan has been approved does not relieve them of the agreement. And the cases cited at pages 22 footnote 6 and 23 footnote 7 all stand for that precise proposition. And finally, going back to your honors question, Judge Leinfeld, I suggest we take a look at U.S. v. Ackerman, 340 U.S. 193, and Armstrong v. the Board of School Directors, both of which stand for the simple proposition that where a party signs a stipulation, and the litigation goes forward, or where a party agrees to settle, and a companion defendant goes on and appeals, and the case is reversed, it doesn't do the settling party any good. I take it that, you know, this subsequent change of law, the agreement is good even if the law changes as a result of some litigation someplace else, and involving other parties. Here, everyone knew, I gather, that the law could change as to what the ultimate responsibility of Exxon might be. As my colleague Mr. O'Neill just handed me says, we all know he'd get skunked, or some other ratio. The Supreme Court's been dealing with ratios and punitive damages since Haslip, as a practical matter. And in further answer to that question, your honor, I refer the court's attention to the in-lace cement and concrete antitrust litigation. There is a case precisely where in the same case, the parties have stipulated to a settlement to whom the class members were, allocation to come later. When allocation time came, one of the parties came in and said, they're not in the class. And the court said, you stipulated they were in the class three years ago. They're in the class, regardless of what you want to demonstrate today. And they get a portion of the damages. With that said, if there are any questions, I'll be happy to respond to them. Thank you. Good morning, your honors. Charles Lifflin for Exxon. I see Mr. Esting has left me nine minutes, but I think I'm only going to use about one. Our only interest, Exxon's only interest, is in the separate request to reopen the amount of, or the amount of the punitive damages award to account for any additional compensatories that Seahawk may recover. There was a couple of million of additional compensatories in the settlement that came after the 2004. Our position is that- That hasn't really been argued this morning. I'm sorry? That wasn't really argued this morning. The request is made in the appeal. If I don't need to argue it, I'm happy to just sit down and answer any questions. I don't need to be hearing what you have to say. You came up from Los Angeles. We should hear you. All right. Thank you. This went up on 54B after it was certified with everyone's knowledge that there was still a few little smaller compensatory claims left, but people wanted finality, and so it went up. The result of this appeal is not like the result of the first two appeals, or the first two remands I should say, where the matter was remanded to the trial judge to reassess under BMW, and he, of course, had the freedom at that point to look at any of the BMW factors that would properly be considered as part of his record for reassessing the punitive award, and he did. And one of the things he did was he looked at intervening compensatories, and he actually relooked at the damages. Let me short circuit it. As I understand it, what the Supreme Court decision means is that there's an aggregate amount of compensatories for the entire class. Punitives are limited to a one-to-one ratio of that, and the parties subsequently agreed on what compensatory figure to use. We then imposed the maximum punitives that could be imposed under a one-to-one ratio based on that figure, and that's the end of it. I think that's right. I would go further and say the Supreme Court said that. The Seahawk might be able to show that they actually have more compensatory damages that are not accounted for in the $507 million or whatever it was that the Supreme Court and the earlier part of this litigation took as the total. It doesn't mean that Exxon should have to pay more. Do I have your position right? Yes, although I would say it's not so much an agreement. It's that the Supreme Court picked the number based on the record that it had, and there's not going to be any further remand in the trial court. That number is the number. Whatever the record is is the record that was before the Supreme Court. Whatever the record is, if there was an issue with the number, and frankly the Supreme Court picked a number that was $3 million higher than the last number that your honors had calculated, we could have gone on rehearing to the Supreme Court. Either side could have done that. Nobody wanted to open Pandora's box, so the decision was made on Exxon's part. The plaintiffs made their own decision, not seek rehearing, and the number was the number. All right. Thank you, Your Honor. Thank you. I'd like to start by addressing your question, Judge Kleinfeld, on whether we should have objected to the allocation long ago. The basis for the objection was created by the U.S. Supreme Court last year. There's no basis for an objection before then. Why wasn't that foreseeable? In other words, I think perhaps the one-to-one, the use of maritime law might have been novel, but certainly the Supreme Court has been discussing ratios for some time, and there would be a fair chance that the Supreme Court would oppose a ratio limit. So why wasn't that foreseeable? Well, as Baker itself said, it was the first case in the entire history of American jurisprudence that imposed a federal maritime common law punitive damages limit. Oh, I understand that, but I mean, why wasn't it that you wanted to register an objection based on what a change in subsequent law on ratio might entail? Why wasn't that fact reasonably foreseeable at the time you agreed to the allocation? I mean, we were with plaintiffs in maximizing the punitive damage recovery. We didn't want to say let's impose a limit and reallocate based on the limit. I'd like to move to the argument that a change in the law after a settlement is approved cannot affect the settlement. And, again, it's a plan of allocation we're talking about, not a settlement, because the settlement agreement is dropped out of the picture. This very court in this very case in Icicle Seafoods changed the law as it related to the Seattle 7's ability to participate in the punitive damages class. That led to a revision in the plan of allocation that significantly affected all members of the class in their allocation. Are you claiming the right to go after Exxon for more punitives or just the right to get more punitives out of the plaintiff's class pot? We're claiming both. The second part of our relief, which is that because the decision appealed to the U.S. Supreme Court was a 54B decision, it only dealt with the punitive damages associated with the compensatory damages that had been found to exist by Judge Hall. But he specifically said there's other compensatory damages that haven't been determined yet, and that's why there's a 54B certification. Those compensatories have as much right to a punitive damage allocation as any other dollar of compensatory damages. I also want to draw the Court's attention to the Thomas case, where there is a settlement approved by a district court judge in a class action. The case was appealed to the D.C. Circuit. In another case, in that time gap while it was on appeal, the court in the D.C. Circuit changed the rules, and that made the decision by the trial judge, which was in conforming with the law at the time, no longer in conforming with the law. So the Circuit said we're throwing out that settlement because it doesn't comply with the law that exists now. It complied with the law that exists then. It doesn't comply with the law that exists now. We're in a stronger case because the law that we're trying to get this Court to adopt is law created in this case by the U.S. Supreme Court. I think I've used my time. Thank you. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning. Court stands adjourned. All rise.
judges: Schroeder, Kleinfeld, Thomas